UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| BOBBIE BABER, *Administratrix of Estate of* LEE ROY SLONE, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 6:22-CV-026-CHB |
| v. | ) ) | |
| ADAM DIALS, *et al.*, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court are Defendants' Motion for Summary Judgment, [R. 36], and the Motion to Reopen Discovery filed by Plaintiff Bobbie Baber, as Administratrix of Lee Roy Slone. [R. 46]. Defendants' Motion for Summary Judgment, submitted on behalf of Defendants Adam Dials, Matt Hicks, Scott Stone, and Zachary Kassee, seeks summary judgment on all of Plaintiff's claims. [R. 36, p. 1]. Plaintiff did not file a response in opposition. Since the Motion for Summary Judgment was filed on May 1, 2024, Plaintiff has retained new counsel. [R. 42]. After retaining new counsel, Plaintiff filed the Motion to Reopen Discovery "to cure the deficiencies caused by prior counsel's neglect." [R. 46, p. 5]. Defendants responded to Plaintiff's motion, arguing that Plaintiff has not demonstrated good cause to reopen discovery. [R. 47]. Plaintiff did not file a reply. The motions are therefore ripe and ready for review. For the reasons that follow, the Court will deny Plaintiff's Motion to Reopen Discovery, grant Defendants' Motion for Summary Judgment as to Count 1, and deny the remaining state law claims (Count 2) without prejudice.

- 1 -

## I.    BACKGROUND

Decedent Lee Roy Slone was arrested on November 2, 2020 at 7:43 a.m. on charges of operating a motor vehicle under the influence of a controlled substance, reckless driving, failure to wear a seatbelt, "improper equipment," failure to maintain required insurance, failure to produce an insurance card, and failure to provide registration plates and receipt. [R. 34-3, pp. 1–2 (Uniform Citation)].[1] At the time of his arrest, he was "confused on what day it was" and advised the arresting officers that he had ingested "a lot of suboxone, and other pills." *Id.* at 1.

After his arrest, Slone was first taken to the Hazard ARH Regional Medical Center ("Hazard ARH"). Plaintiff states that, "[a]ccording to a police officer," Slone refused medical treatment while at Hazard ARH. [R. 1, p. 2]; [R. 34-3, p. 1]; [R. 36-3 (Dials Affidavit)].[2] He was then transported to the Kentucky River Regional Jail and booked on November 2, 2020 at 9:01 a.m. [R. 1, p. 1]. Defendant Adam Dials, a deputy jailer, was present while Slone filled out the Standard Medical Questions form in a detox holding cell, and he interviewed Slone.[3] [R. 36-3]; [R. 34-4 (Standard Medical Questions Form)]. On the form, Slone denied that he had "ingested dangerous levels of drugs and alcohol" and denied having a "serious medical condition that may

---

[1] The Court provided a detailed overview of the factual and procedural background of this case in its January 22, 2024 Memorandum Opinion and Order. [R. 35]. The Court repeats much of that background information herein. The Court also notes that the defendants have largely copied and pasted from the Court's prior order when reciting the facts. [R. 36-1, pp. 4–5].

[2] To the extent the Court cites to Plaintiff's complaint in this background section, it is only to provide a general overview of the factual background and Plaintiff's allegations. However, it is not signed by Plaintiff under penalty of perjury and is therefore not a verified complaint, so the Court cannot consider it as the equivalent of an opposing affidavit for summary judgment purposes. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) ("But this view of the record fails to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."); *Stokes v. Ohio Truck Sales, LLC*, 633 F. Supp. 3d 1023, 1029 (N.D. Ohio 2022) ("A verified complaint is a complaint that the plaintiff signs under penalty of perjury. Therefore, it 'carries the same weight as would an affidavit for the purposes of summary judgment.'" (quoting *El Bey*, 530 F.3d at 414)). Moreover, while the complaint references a jail video, that video is not in the record, and the Court cannot consider it.

[3] The complaint also refers to some defendants by multiple titles indicative of their position at the jail. For instance, the complaint refers to Defendant Stone as both a deputy jailor and Major. [R. 1, ¶ 5]. Because the defendants admitted in their Answer that they are deputy jailors, the Court will refer to them as such. [R. 16].

require attention while" at the jail. [R. 34-4]. Slone did not sign this form. *Id.* Dials reported that Slone appeared intoxicated and wrote at the bottom of the form that he placed Slone on a mat to prevent Slone from falling and injuring himself. *Id.*; [R. 36-3].

Throughout the day, Defendant Zachary Kassee, another deputy jailor, claimed that he checked on Slone "multiple times" and that, on "many occasions[, he] was sitting up, alert, and always seemed to be trying to vomit." [R. 34-5 (Kassee Statement Form)]. Kassee also offered Slone lunch, but Slone "did not eat much if any of the meal." *Id.*

Around 2:25 p.m. that day, Kassee checked on Slone and "asked him if he was doing okay." *Id.* Slone nodded his head "slightly." *Id.* Kassee decided to contact Dials about Slone's condition, and Dials requested that a nurse on duty check on Slone. [R. 34-5]; [R. 36-3]. The nurse checked Slone's vitals and said that the results were "good." [R. 34-5]; [R. 36-3]. According to Dials, Slone was "sitting up and responsive at that time." [R. 36-3]. There are no allegations, nor any evidence of record, suggesting that any jail personnel checked on Slone the remainder of the day.

At approximately 5:20 a.m. on November 3, 2020, Defendant Matt Hicks, a deputy jailor, checked on Slone in his cell and found him unresponsive. [R. 34-6 (Incident Report Form)]. Hicks then called Joe Pridemore to "assist [him] with inmate control" then opened Slone's cell door. *Id.* Pridemore "immediately started CPR" once he arrived at the cell. *Id.* Hicks called Defendant Scott Stone, a deputy jailor and Hicks's supervisor, to inform Stone about Slone's condition, and then Hicks called 911. *Id.* While Hicks spoke with the 911 operator, Pridemore and Stone performed CPR on Stone. *Id.* Emergency medical services arrived minutes later, [R. 34-7, p. 2 (EMS Report)], but they were not able to resuscitate Slone. *Id.* at 1–2.

Slone was pronounced dead at 6:24 a.m. [R. 1, p. 1]; [R. 34-2, pp. 1–2 (Medical Examiner's Report)]. Slone's cause of death was determined to be "cerebral infarct with intracerebral hemorrhage due to hypertensive and atherosclerotic cardiovascular disease."[4] [R. 34-2, p. 2].

On February 10, 2022, Slone's estate, through Administratrix Baber, brought suit against the above-named jail personnel, as well as Wendy Centers, a nurse employed by a third-party and assigned to work at the jail. [R. 1]; *see also id.* ¶ 7. Plaintiff alleges the following causes of action: under 42 U.S.C. § 1983, deliberate indifference resulting in cruel and unusual punishment and denial of due process in violation of the Eighth and Fourteenth Amendments[5] (Count 1, against all defendants); under Kentucky state law, "negligence/gross negligence/wrongful death" (Count 2, against all defendants). *See* [R. 1]. All defendants have been sued in their individual capacities.[6] *Id.* at 1. Plaintiff seeks actual damages, punitive damages, and attorney's fees. *Id.* at 7.

A Scheduling Order was entered on November 1, 2022, [R. 24], then amended on February 17, 2024, setting deadlines for the completion of discovery and the filing of dispositive motions. [R. 28]. On November 1, 2022, Defendants filed a Notice of Service, alerting the Court that they had submitted interrogatories and a request for production of documents to Plaintiff. [R. 25].

---

[4] A cerebral infarct is a term for the death of tissue in the brain caused by a stroke. *Stroke*, STAN. MED., https://stanfordhealthcare.org/medical-conditions/brain-and-nerves/stroke.html# [https://perma.cc/N8G6-SBBE] (last visited Dec. 2, 2024). The medical examiner determined that Slone's stroke occurred with intracerebral hemorrhage, which is a condition where "[b]leeding occurs suddenly and rapidly." [R. 34-2, p. 2]; *Types of Stroke*, JOHNS HOPKINS MED.,                                     https://www.hopkinsmedicine.org/health/conditions-and-diseases/stroke/types-of-stroke#:~:text=Hemorrhagic%20strokes%20occur%20when%20a,has%20a%20risk%20for%20rupturing [https://perma.cc/ZE3R-SW2T] (last visited Dec. 2, 2024). Johns Hopkins Medicine reports that an intracerebral hemorrhage "usually [occurs with] no warning signs[,] and bleeding can be severe enough to cause coma or death." *Types of Stroke*, *supra*.

[5] Plaintiff also alleges a violation of the Kentucky Constitution in Count 1. [R. 1, ¶ 17]. As Plaintiff is asserting this claim under § 1983, "such a claim is not cognizable under § 1983 as that statute is meant to provide a cause of action for violation of federally-created rights, not state constitutions." *Overall v. Oakland Cnty.*, 670 F. Supp. 3d 437, 451 (E.D. Mich. 2023).

[6] At the request of Plaintiff, the Court dismissed the claims against Defendant Joe Pridemore on September 14, 2022, due to his death. [R. 14]; [R. 15].

On May 5, 2023, at Plaintiff's request, Magistrate Judge Hanly Ingram amended the scheduling order a second time and set the following deadlines:

> The parties shall complete all fact discovery by September 15, 2023. The parties shall complete all expert discovery by February 29, 2024. These deadlines mean, as relevant, service of written discovery calculated to secure a response by and compliant with the deadlines. 4. Per Rule 26(a)(2), no later than October 16, 2023, Plaintiff shall disclose the identity of expert witnesses who may be used at trial, accompanied by written reports signed by the Rule 26(a)(2)(B) expert witnesses and/or written summaries consistent with Rule 26(a)(2)(C), as applicable, all in compliance with the rule. These disclosures need not be filed in the Court record. Defendants by December 15, 2023. 5. Dispositive motions by May 1, 2024. Response and reply time per local rule.

[R. 29]. Judge Ingram also ordered the parties to attend a telephonic status conference on July 14, 2023. *Id.* Plaintiff's counsel did not attend the conference, and Judge Ingram ordered Plaintiff to show cause for this failure to attend. [R. 31]. On July 18, 2023, Plaintiff's counsel responded to this order, apologizing for his clerical error in not adding the conference to his calendar. [R. 32]. The Show Cause Order was ultimately discharged after a telephonic status conference with Judge Ingram, at which counsel for both Plaintiff and Defendants appeared. [R. 33].

Defendant Centers filed a Motion for Summary Judgment on December 15, 2023. [R. 34]. Plaintiff did not file a response. On January 22, 2024, the Court granted this motion and dismissed Plaintiff's claims against Nurse Centers, explaining that Centers was not on duty during the relevant time period, and she had no contact with Slone. [R. 35].

By April 30, 2024, a day before dispositive motions were due in this matter, counsel for the remaining defendants had not received Plaintiff's answers to interrogatories or any documents related to their November 1, 2022 discovery request. [R. 47, p. 2]. The day before, April 29, 2024, Defendants' counsel reached out to Plaintiff's counsel by email to discuss the upcoming dispositive motion deadline:

> We never received discovery responses, documents nor releases in this one. I have a dispositive motions deadline coming up and looks like we will need to file a motion to compel and motion for extension of time. Any status on this one? Any chance of voluntary dismissal?

[R. 44-1]. It appears from the email chain submitted by Defendants that counsel for the parties attempted to set up a phone call on April 30, 2024, but no discovery responses were ever returned to Defendants. [R. 44-1]; [R. 47, p. 2].

On May 1, 2024, Defendants filed this Motion for Summary Judgment. [R. 36]. Plaintiff did not file a response. On July 18, 2024, this Court ordered Plaintiff's counsel to show cause "as to why she has stopped participating in this action," since Plaintiff's last filing was on July 18, 2023. [R. 37, p. 1]. Plaintiff was warned that (1) her "failure to respond to this Order could result in dismissal of this action without prejudice for failure to prosecute," and (2) her "failure to reply could result in the Court treating the [d]efendants' Motion for Summary Judgment as unopposed and ruling on the merits." *Id.* at 1–2. Plaintiff did not respond to this order.

On August 13, 2024, this Court again ordered Plaintiff to show cause—in person—about her failure to participate in this action and warned her again about the consequences if she did not respond to the Court's order. [R. 38]. On August 26, 2024, Plaintiff's counsel responded to this show cause order by explaining that he and his family had unexpected medical complications that impacted his ability to manage his caseload and keep up with various court deadlines. [R. 39]. At the in-person show cause hearing the next day, the Court directed Plaintiff to file any motion to reopen discovery within fourteen days and noted that an expedited briefing schedule would be imposed if Plaintiff filed this discovery motion. [R. 40]. Plaintiff's counsel instead filed a motion to withdraw on September 5, 2024, which the Court granted, and Plaintiff's new counsel filed an appearance that same day. [R. 41]; [R. 42].

Plaintiff, through her new counsel, filed the Motion to Reopen Discovery on September 10, 2024. [R. 46]. Defendants timely filed a response opposing the motion. [R. 47]. Plaintiff did not file a reply.

Accordingly, two motions are now before the Court: the Motion to Reopen Discovery, [R. 46], and the motion seeking summary judgment on the remaining claims, namely, the § 1983 claim for deliberate indifference (Count 1, against Defendants Dials, Kassee, Stone, and Hicks), and the "negligence/gross negligence/wrongful death" claim (Count 2, against Defendants Dials, Kassee, Stone, and Hicks). These motions are ripe for review, and the Court considers each in turn.

## II.    ANALYSIS

### A.    Motion to Reopen Discovery, [R. 46]

#### 1.    Legal Standard

Because the Motion to Reopen Discovery seeks to amend the deadlines for conducting discovery in this matter, the Court looks to Federal Rule 16, which governs a motion to amend a scheduling order. Fed. R. Civ. P. 16(b)(4). Pursuant to that rule, modification of a scheduling order may only be granted "for good cause and with the judge's consent." *Id.* However, "[w]hen a movant seeks to extend or modify a deadline in the scheduling order that has already passed, the Court's assessment of 'good cause' focuses on 'the moving party's diligence in attempting to meet the case management order's requirements.'" *Carroll v. Young*, No. 1:19-CV-153-GNS-HBB, 2022 WL 14151977, at *4 (W.D. Ky. Oct. 24, 2022) (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). "Thus, a movant must show that despite his diligence the deadline in the scheduling order could not have reasonably been met." *Id.* (citation omitted). "[C]ourts may also consider prejudice to the nonmoving party. But the Court must first find that the moving party proceeded diligently before considering whether the nonmoving party is prejudiced, and only then

to ascertain if there are any additional reasons to deny the motion." *Mercer v. Wal-Mart Stores E., L.P.*, No. 4:23-CV-00119-RGJ-HBB, 2024 WL 2806192, at *1 (W.D. Ky. May 31, 2024) (citing *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 479 (6th Cir. 2014)) (internal quotation marks omitted); *see also Garrison v. Sam's E., Inc.*, No. 1:16-CV-00152-GNS, 2018 WL 4558201, at *2 (W.D. Ky. Sept. 21, 2018); *Carroll*, 2022 WL 14151977, at *4 ("[A] movant who fails to show he acted diligently will not be accorded relief under Rule 16(b)(4) merely because the opposing party will not suffer substantial prejudice as a result of the modification of the scheduling order." (citing *Interstate Packaging Co. v. Century Indem. Co.*, 291 F.R.D. 139, 145 (M.D. Tenn. Jan. 22, 2013))).

The Sixth Circuit utilizes five factors when "reviewing a district court's denial of additional time for discovery." *Bentkowski v. Scene Mag.*, 637 F.3d 689, 696 (6th Cir. 2011). Accordingly, district courts use these factors to guide their evaluations of whether the moving party has shown good cause to reopen discovery. *See, e.g.*, *Kindoll v. S. Health Partners*, No. 17-CV-84-DLB-CJS, 2019 WL 1461078, at *2–4 (E.D. Ky. Apr. 2, 2019); *Mercer*, 2024 WL 2806192, at *1–4. The "overarching" consideration of these factors is whether the party was diligent in pursuing discovery, and as such, they are used to inform the "main inquiry" about a party's diligence. *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 478 (6th Cir. 2010); *Bentkowski*, 637 F.3d at 696 (citing *Dowling*, 593 F.3d at 478); *Day v. Outback Steakhouse of Fla., LLC*, No. 5:20-CV-506-DCR, 2022 WL 1812250, at *1 (E.D. Ky. June 2, 2022) (applying the five *Dowling* factors but noting that "the main inquiry" is about the party's diligence in "pursuing discovery" (citing *Dowling*, 593 F.3d at 478) (internal quotation marks omitted)). These factors include:

(1) when the moving party learned of the issue that is the subject of discovery;

(2) how the discovery would affect the ruling below [i.e., the outcome at the trial court];

(3) the length of the discovery period;

(4) whether the moving party was dilatory; and

(5) whether the adverse party was responsive to prior discovery requests.

*Bentkowski*, 637 F.3d at 696 (citing *Dowling*, 593 F.3d at 478); *see Hall v. Navarre*, 118 F.4th 749, 755 (6th Cir. 2024) (citing *Bentkowski*, 637 F.3d at 696). Ultimately, "[d]istrict courts, it is well understood, enjoy 'broad discretion over docket control and the discovery process.'" *Hall*, 118 F.4th at 754 (6th Cir. 2024) (quoting *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018)); *Kindoll*, 2019 WL 1461078, at *2 ("The Court has broad discretion over discovery matters." (citing *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999)).

### 2.    Good Cause

Plaintiff cites to the five factors listed above but fails to engage with them. Instead, the plaintiff focuses her argument on prior counsel's "fail[ure] to fulfill his [discovery] obligations." [R. 46, p. 2]. In particular, Plaintiff notes that her prior counsel failed to attend a 2023 telephonic status conference, which resulted in an order to show cause; failed to respond to Defendants' discovery requests, "despite numerous communications from opposing counsel" to do so; failed to disclose expert witnesses, "a critical failure in a case involving medical claims that require expert testimony to establish causation"; and failed to respond to Defendants' Motion for Summary Judgment as to Defendant Wendy Centers. *Id.* Plaintiff asserts that these facts support a showing of good cause. *Id.* at 4. Because of these failures, and Plaintiff's purported showing of good cause, Plaintiff requests that the Court reopen discovery so that Plaintiff has "the opportunity to disclose expert witnesses, respond to written discovery, and complete necessary depositions." *Id.* at 5. In response, Defendants argue that Plaintiff has, in fact, not met the good cause standard to reopen discovery. [R. 47, p. 5]. Defendants contend that "prior counsel's fail[ure] to prosecute the case in a diligent manner" is not sufficient for good cause and that "reopening of discovery at this late

- 9 -

date and after the filing of a dispositive motion will significantly impair the defense of this matter." *Id.* at 6. Plaintiff did not file a reply.

In considering these arguments, the Court first turns to the five factors outlined above. First, while neither party specifically addresses the timing of "when the moving party learned of the issue that is the subject of discovery," or what the particular issue is, the Court finds that Plaintiff has not demonstrated good cause under this prong. *Dowling*, 593 F.3d at 478. "Diligence is not measured by what a party believes prior counsel *did not do that should have been done*. Rather it is measured by whether prior counsel *could not have conducted* the desired discovery within the allotted time, despite prior counsel's best efforts." *Mercer*, 2024 WL 2806192, at *2. Plaintiff puts forward no evidence that the witnesses she wishes to depose were unavailable prior to the expiration of the period of discovery, nor does she argue that her previous counsel "*could not have conducted* the desired discovery" on time with the proper diligence. *Id.* She only reiterates that her counsel did not conduct necessary discovery, which is not the proper measure of diligence under this prong. Plaintiff does not argue, and the Court does have any reason to believe, that she was not knowledgeable about the issues that would be the subjects of discovery from the very beginning of this case, or that there is "new information" that compels additional time for discovery. *Id.* Therefore, this prong does not favor granting the plaintiff's motion.

Under the second prong, the Court evaluates how discovery would affect the outcome of the case. *Dowling*, 593 F.3d at 478. Because "it is not related to the primary question of a party's diligence," this prong "carries the least weight in the analysis." *Mercer*, 2024 WL 2806192, at *3. Indeed, "it appears to be an equitable component of the analysis intended to weed-out irrelevant or marginally relevant additional desired discovery." *Id.* Thus, this prong requires the moving party—in this case, the plaintiff—to show that the additional discovery would "affect the district

court ruling, [not] merely that [it] may contain relevant information." *Dowling*, 593 F.3d at 479. Here, it is unclear what evidence additional discovery would produce and whether that evidence would impact the Court's summary judgment ruling, since Plaintiff has not identified the discovery she seeks to conduct with particularity. *Compare Kindoll*, 2019 WL 1461078, at *2 (finding that the second prong weighed in favor of reopening discovery because the moving party identified evidence it would gather during discovery that would affect the district court's ruling, where the court previously determined that there was a "genuine dispute of material fact" and denied summary judgment on that issue), *with Bentkowski*, 637 F.3d at 697 (determining that the second prong did not favor the moving party because "[the moving party] made no effort to conduct discovery in the four and a half months allotted for non-expert discovery and offered no explanation for his lack of diligence. In addition, further discovery would not have affected the summary judgment ruling"). Therefore, without greater specificity from the plaintiff about the discovery she seeks to conduct, the Court is unable to determine whether this prong weighs in favor of reopening discovery. At best, the Court considers this prong to be neutral and afforded little weight in the analysis. *See Mercer*, 2024 WL 2806192, at *3 (finding that this prong "carries the least weight in the analysis").

The third prong—the length of discovery—cuts against the plaintiff. *Dowling*, 593 F.3d at 478. Under the amended scheduling order, the parties had over two years to conduct expert discovery, and expert witness disclosures were not due until over eighteen months after the filing of Plaintiff's complaint. [R. 29]. Defendants were able to timely submit their discovery requests, and Plaintiff did not alert the Court of any difficulties in meeting the discovery deadlines until long after discovery had closed; specifically, while fact discovery closed on September 15, 2023, and expert discovery closed on February 29, 2024, Plaintiff did not file to reopen discovery until

September 10, 2024. *Id.*; [R. 46]. Moreover, the discovery deadlines were previously extended at Plaintiff's request. [R. 29]; *see Dowling*, 593 F.3d at 479 (determining that the plaintiffs had not met the third prong because "[i]n this case, the [plaintiffs] did not file their motion for additional time for discovery until fifteen months after they filed their lawsuit in the district court on July 30, 2007. At no time during the pendency of the lawsuit did the [plaintiffs] request written discovery from the Clinic nor did they move for an extension of time to conduct discovery for the purpose of opposing the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(f)"); *Bentkowski*, 637 F.3d at 697 (affirming district court's denial of the plaintiff's motion to extend discovery because "[h]e made no effort to conduct discovery in the four and a half months allotted for non-expert discovery and offered no explanation for his lack of diligence," only requesting the extension "on the date of the non-expert discovery deadline"). This prong therefore weighs against reopening discovery.

The fourth prong considers "whether the plaintiff was dilatory." *Dowling*, 593 F.3d at 478; *Hall*, 118 F.4th at 755 (citing *Bentkowski*, 637 F.3d at 696). This prong addresses the crux of Plaintiff's argument in her motion; she argues that prior counsel's failure to act in this case is good cause for reopening discovery. *See* [R. 46]. That does not, however, demonstrate good cause.

> "It must be admitted that in the preparation and trial of a law suit the attorney acts as the agent of his client and that the client is bound by the acts of his attorney in the course of that litigation." *Lisanby v. Illinois C. R. Co.*, 209 Ky. 325, 272 S.W. 753, 754 (Ky. 1925). Carelessness or attorney error is insufficient to constitute good cause under Rule 16(b), even when a party was not informed of her attorney's actions. *Banks v. City of Philadelphia*, No. 14-82, 309 F.R.D. 287, 290–91 (E.D. Penn. Aug. 14, 2015). "The case law is clear, however, that after the party's lack of diligence has otherwise been established, new counsel's entry into a case does not serve as a magic wand that enables the party to conjure up a showing of good cause." *Glaxosmithkline, LLC v. Glenmark Pharmaceuticals, Inc., USA*, No. 14-877-LPS-CJB, 2016 WL 7319670, at *3 (D. Del. Dec. 15, 2016). Consequently, Garrison's contention that her prior counsel failed to prosecute the case in a diligent manner does not constitute "good cause" under Rule 16(b)(4) for amendment of the scheduling order.

- 12 -

*Garrison*, 2018 WL 4558201, at *2–3. Here, it is clear that Plaintiff's prior counsel did not act diligently in this matter. Prior counsel did not engage in discovery, respond to Defendants' requests for discovery, and, in some instances, even respond to requests from the Court regarding the status of prosecution. While prior counsel's failure to prosecute this matter is certainly unfortunate, it does not constitute good cause to reopen discovery. *See Carroll*, 2022 WL 14151977, at *5 (finding that good cause had not been shown even when Plaintiff's "counsel failed to conduct any depositions" during the lengthy discovery period or to request earlier modification of the scheduling order before its expiration).

Lastly, prong five considers the responsiveness of the other party during discovery. *Dowling*, 593 F.3d at 478; *Kindoll*, 2019 WL 1461078, at *3. This prong also cuts against the plaintiff. As shown in the record, Defendants filed multiple requests related to discovery, met the deadlines set by the Court, and reached out to Plaintiff's counsel to inquire about the status of discovery when they had not received responses to those discovery requests. [R. 25]; [R. 36]; [R. 44-1]. Based on the record before the Court, Defendants made no attempts to evade communication with Plaintiff, and their actions illustrate responsiveness throughout the litigation of this matter. *Dowling*, 593 F.3d at 480 (finding that, even though the defendant "was not responsive as to informal discovery," it was sufficient under this prong that the defendant "complied with prior formal discovery requests"); *Est. of Kenzie Elizabeth Murdock et al. v. Monsanto Co.*, No. 5:23-CV-128-BJB-LLK, 2024 WL 4895739, at *4 (asserting that the plaintiffs had not shown that the "[d]efendant was unresponsive to its discovery requests. While [the defendant] did not voluntarily provide the requested discovery, there is no indication that [the defendant] ignored [the plaintiffs'] requests" (internal citation omitted)).

- 13 -

The Court finds that, in balancing all five of these factors, the plaintiff has not shown diligence in meeting the discovery deadlines and has therefore not demonstrated good cause to amend the scheduling order to reopen discovery in this matter. Because the plaintiff has not demonstrated diligence, the Court need not consider prejudice to the nonmoving party. *Mercer*, 2024 WL 2806192, at *1. Therefore, the Court will deny Plaintiff's Motion to Reopen Discovery, [R. 46].

### B.    Motion for Summary Judgment, [R. 36]

#### 1.    Legal Standard

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment if it finds "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also Anderson*, 477 U.S. at 256. That burden may be satisfied by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case for which he or she bears the burden of proof. *Celotex Corp.*, 477 U.S. at 323.

- 14 -

Once the moving party satisfies this burden, the non-moving party must then produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc. v. Ford Motor Co.*, 48 F.3d 201, 205 (6th Cir. 1995) (citation omitted); *see Turner-Meadows v. GM, LLC*, 786 F. App'x 592, 595–96 (6th Cir. 2019). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970)).  However, the Court is not obligated to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

Plaintiff failed to respond to Defendants' motion, and Defendants argue that Plaintiff's "failure to prosecute" provides a reason to grant their motion. [R. 36-1, p. 16].[7] Of course, "[f]ailure to respond is not itself grounds for the Court to grant summary judgment because summary judgment by default is improper." *J & J Sports Prods., Inc. v. Tonita Rest., LLC*, No. 5:13-CV-382-REW, 2015 WL 9462975, at *1 n.3 (E.D. Ky. Dec. 28, 2015) (citing *Miller v. Shore Fin. Servs., Inc.*, 141 F. Appx. 417, 419 (6th Cir. 2005)) (per curiam); *Green v. United States*, No. 6:11-CV-59-HRW, 2013 WL 209019, at *2 (E.D. Ky. Jan. 17, 2013). However, "[u]pon consideration of 'the motion and supporting materials,' the Court can grant summary judgment if otherwise proper." *J & J Sports Prods., Inc.*, 2015 WL 9462975, at *1 n.3 (quoting Fed. R. Civ.

---

[7] Defendants cite to Federal Rule 41(b), which allows the Court to dismiss a matter for failure to prosecute. [R. 36-1, p. 15]; Fed. R. Civ. P. 41(b). Dismissal is not, however, the relief that Defendants are seeking in their Motion for Summary Judgment. By citing to Plaintiff's failure to participate in this litigation, it appears that Defendants are actually arguing that Plaintiff cannot meet her burden under Rule 56, given the lack of evidence supporting her position.

P. 56(e)(3)). "A failure to respond is consequential, though, if the precipitating motion has merit under the summary judgment rubric." *Id.* Indeed, "at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the *moving party's arguments*." *Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022).

### 2.    Section 1983 Claim (Count 1)

Plaintiff brings a claim under § 1983 for deliberate indifference under the Eighth and Fourteenth Amendments. [R. 1]. "In order to establish a claim under § 1983, a plaintiff must establish that a defendant: (1) was acting under color of state law, and (2) deprived her of rights, privileges or immunities secured by the Constitution or laws of the United States." *Burden v. Paul*, No. 2009-105, 2011 WL 4431819, at *3 (E.D. Ky. Sept. 22, 2011) (citing *Fridley v. Horrighs*, 291 F.3d 867, 871–72 (6th Cir. 2002)); *Farris v. Oakland Cnty.*, 96 F.4th 956, 963 (6th Cir. 2024).

In considering Plaintiff's § 1983 claim, the Court first turns to whether the remaining defendants are entitled to qualified immunity on this claim, as argued by Defendants. [R. 36-1, pp. 9, 13]. To defeat a claim of qualified immunity "the evidence viewed in the light most favorable to the plaintiffs must permit a reasonable juror to find that: (1) the Officers violated a constitutional right; and (2) the right was clearly established." *Lewis v. Tackett*, 697 F. Supp. 3d 702, 717 (E.D. Ky. 2023) (quoting *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 724 F.3d 687, 695 (6th Cir. 2013)). "If the answer to either question is 'no,' then the official is entitled to qualified immunity." *Finley v. Huss*, 102 F.4th 789, 804 (6th Cir. 2024) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

### a.    Clearly Established Right

In considering Defendants' qualified immunity arguments, the Court will first determine whether a right to adequate medical care was clearly established at the time of Slone's death. *See*

*Colson v. City of Alcoa*, No. 20-6084, 2021 WL 3913040, at *4 (6th Cir. Sept. 1, 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)) (noting that courts may decide the qualified immunity issues in either order). It is unclear whether Defendants dispute that there is a clearly established right in this case. *See* [R. 36-1, pp. 9, 13]. To the extent that the defendants are attempting to make that argument in their motion, they expend no effort to discuss that element in their analysis or cite to any authority for their assertion. Because this argument is wholly undeveloped, the Court considers it waived. *United States v. Layne*, 192 F.3d 556, 566–67 (6th Cir. 1999) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived"). Regardless, it is clear that a pretrial detainee has a constitutional right under the Fourteenth Amendment to adequate medical care.[8] Sixth Circuit case law demonstrates that "the Fourteenth Amendment right of pretrial detainees to adequate medical care is, and has long been, clearly established." *Est. of Owensby v. City of Cincinnati*, 414 F.3d 596, 604 (6th Cir. 2005).

**b.    Constitutional Violation**

---

[8] "Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment." *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). Courts have considered this general right to be a clearly established right, but the Sixth Circuit has recently emphasized that a plaintiff should define a clearly established right with greater specificity. *See Finley*, 102 F.4th at 808 ("The Supreme Court has repeatedly commanded inferior courts not to define rights at too high a level of generality. A right must be defined with enough specificity to address 'whether the official acted reasonably in the particular circumstances that he or she faced.'" (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018))); *Gomez v. City of Memphis*, Nos. 21-5473, 21-5644, 2023 WL 7287100, at *5 (6th Cir. Aug. 4, 2023) ("The question is whether the officials had fair warning that their actions were unconstitutional at something other than the highest level of generality." (quoting *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005)) (internal quotation marks omitted)). This can be accomplished by pointing to a case with analogous facts to show that there was case law supporting a specific clearly established right such that the defendants were on notice that their actions would violate that right. *See Finley*, 102 F.4th at 808. In any event, a review of post-2020 decisions shows that courts have continued to determine that the right to adequate medical care constitutes a "clearly established right." *Hyman*, 27 F.4th at 1237; *Reece v. Carey*, No. 22-5275, 2023 WL 3003191, at *3 (6th Cir. Apr. 19, 2023).

The Eighth Amendment prohibits prison officials from "unnecessarily and wantonly inflicting pain" on an inmate by acting with "deliberate indifference" toward the inmate's serious medical needs. *See Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Pretrial detainees are afforded the same protections under the Fourteenth Amendment.[9] *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)); *Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244 (1983). During the relevant time period, a pretrial detainee's Fourteenth Amendment deliberate indifference claim was analyzed "under the same framework for deliberate-indifference claims brought by prisoners pursuant to the Eighth Amendment, including claims of inadequate medical care."[10] *Martin v. Warren Cnty.*, 799 F. App'x 329, 337 (6th Cir. 2020) (citation omitted). Accordingly, for purposes of the present motion, a prison official's deliberate indifference violates a pretrial detainee's constitutional rights when the official intentionally denies or delays access to medical care for a serious medical need. *Blackmore*, 390 F.3d at 895 (citing *Estelle*, 429 U.S. at 104). This analysis has both an objective and subjective component. *Id.* (citations omitted). First, under the objective component, there must be a "sufficiently serious" medical need. *Id.* (citations omitted). Under the subjective component, the inmate or detainee must "show that the prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Id.* (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)); *see Gomez*, 2023 WL 7287100, at *3.

---

[9] The defendants argue that Plaintiff's "Eighth Amendment claims should properly be dismissed" since Slone was a pretrial detainee. [R. 36-1, p. 6]. As detailed above, pretrial detainees are afforded the same protections guaranteed by the Eighth Amendment through the Fourteenth Amendment. Plaintiff cites both the Eighth and Fourteenth Amendment in the complaint. [R. 1, ¶ 12]. Accordingly, the Court does not understand Plaintiff to be bringing a separate Eighth Amendment claim; instead, Plaintiff is bringing a claim for deliberate indifferent, which is guaranteed by the Eighth Amendment and applied to pretrial detainees through the Fourteenth Amendment.

[10] To the extent recent case law applies a different standard to pretrial detainees asserting deliberate indifference claims, the Court addresses that standard below, but for the reasons stated herein, it must apply the higher standard in effect prior to 2021. *See infra* note 11.

- 18 -

### i.    Objective Element (Serious Medical Need)

To satisfy the objective element of this two-part test, "a plaintiff must identify a serious medical need, which is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Martin*, 799 F. App'x at 338 (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotation marks omitted)). For example, in *Blackmore*, a pretrial detainee "complained of 'sharp' and 'severe' stomach pains for an extended period of time." *Blackmore*, 390 F.3d at 899. He also vomited, which was "a clear manifestation of internal physical disorder." *Id.* Further, the jail officers deemed his condition to be serious enough to place him in an observation cell, and he complained (both orally and in writing) for over two days before receiving medical care. *Id.* The Court examined these facts and concluded that "a jury could reasonably find that Blackmore had a serious need for medical care that was 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Gaudreault v. Mun. of Salem*, 923 F.2d 203, 208 (1st Cir. 1990)).

The defendants appear to dispute whether there was a "serious medical need" in this case in a single sentence. *See* [R. 36-1, p. 7 ("Here, there is no proof of record to establish that either (1) the medical need was sufficiently serious or (2) that any of the named defendants were actually aware of the plaintiff's serious medical needs and chose to disregard that risk.")]. To the extent that the defendants are attempting to dispute the "serious medical need" element in their motion, they expend no effort to discuss that element in their analysis or cite to any authority for this assertion. Because this argument is wholly undeveloped, the Court considers it waived. *Layne*, 192 F.3d at 566–67 (citing *McPherson*, 125 F.3d at 995–96) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see*

*also Brindley*, 61 F.3d at 509 (observing that "[w]e consider issues not fully developed and argued
to be waived").

Moreover, even if this prong were clearly disputed by the defendants, case law from this
circuit indicates that Slone experienced a "serious medical need" sufficient to satisfy the objective
element. Indeed, the Sixth Circuit has "routinely held that a condition resulting in death is
sufficiently serious to meet the objective component." *Alzid v. Porter*, No. 23-2098, 2024 WL
4579427, at *4 (6th Cir. Oct. 25, 2024) (quoting *Burwell v. City of Lansing*, 7 F.4th 456, 463–64
(6th Cir. 2021)) (internal quotation marks omitted). Here, Slone died from "cerebral infarct with
intracerebral hemorrhage due to hypertensive and atherosclerotic cardiovascular disease," a
description of a stroke. [R. 34-2, p. 2]. Further, other district courts have previously determined
that a stroke is a serious medical need for a deliberate indifference claim. *See Mariano v. City of
Las Vegas*, No. 2:18-cv-01911-APG-EJY, 2023 WL 9119811, at *3 (D. Nev. Sept. 21, 2023)
("There is no dispute [the plaintiff] had a serious medical need because he suffered a stroke.");
*Mosier v. Glob. Econ. Opportunities Grp.*, No. 5:20-CV-308-TES-MSH, 2021 WL 11732405, at
*4 (M.D. Ga. Feb. 16, 2021) (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)), *report
and recommendation adopted in part by*, No. 5:20-CV-308-TES-MSH, 2021 WL 11732577 (M.D.
Ga. May 26, 2021) ("A stroke is a serious medical need for purposes of an Eighth Amendment
claim."). Therefore, it appears that Slone's stroke constituted a serious medical need that was
sufficient to meet the objective component. Regardless, the Court finds that the defendants did not
have a sufficiently culpable state of mind, for the reasons discussed below.

### ii.    Subjective Element (State of Mind)

To satisfy the subjective component of the deliberate indifference test, the pretrial
"detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in

denying medical care." *Winkler*, 893 F.3d at 891 (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)) (internal quotation marks omitted). Under the applicable case law, "[a] defendant has a sufficiently culpable state of mind if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The Sixth Circuit has explained that "[t]his means that 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). [11]  In other words, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)) (internal quotation marks omitted).

However, "[a] plaintiff need not show that the defendant acted with the very purpose of causing harm," though he "must show something greater than negligence or malpractice." *Winkler*, 893 F.3d at 891 (citing *Farmer*, 511 U.S. at 835). Accordingly, this showing "has generally been equated with one of 'recklessness.'" *Id.* (quoting *Farmer*, 511 U.S. at 836). In *Farmer*, the Sixth

---

[11] In 2021, in *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2021), the Sixth Circuit modified the subjective component for pretrial detainees bringing deliberate indifference claims. *Id.* at 596–97. While the exact contours of this modification were initially unclear, the Sixth Circuit ultimately "settled on a test that reduced *Farmer*'s subjective element from 'actual knowledge to recklessness.'" *Lawler as next friend of Lawler v. Hardeman Cnty.*, 93 F.4th 919, 927 (6th Cir. 2024) (citations omitted). Thus, under this new standard, "officers can face liability even if they did not *actually* know of a risk of harm to a pretrial detainee," and "[p]retrial detainees need only prove that the officers *recklessly disregarded* a risk so obvious that they either knew or should have known of it." *Id.* (citation omitted). However, the events of the present case occurred in 2020. "The Court must consider the clearly established law at that time, meaning the higher subjective standard that previously applied to both Eighth and Fourteenth Amendment claims." *Sturgill v. Mutrespaw*, No. 1:19-cv-594, 2024 WL 3925663, at *8 (S.D. Ohio Aug. 22, 2024) (citing *Lawler*, 93 F.4th at 927–28); *see also Whyde v. Sigsworth*, No. 22-3581, 2024 WL 4719649, at *2 (6th Cir. 2024) ("[Plaintiff] can't benefit from *Brawner*. Our court decided that case in September 2021—more than four years after [Plaintiff]'s stay in the Erie County Jail. And to overcome qualified immunity, [Plaintiff] must show that officials violated law that was clearly established at the time of the alleged misconduct. *Brawner* didn't control in 2017; the Supreme Court's decision in *Farmer* did. And under the *Farmer* standard, the officials here aren't liable unless [Plaintiff] can show they kn[ew] of and disregard[ed] an excessive risk to his health." (internal citations omitted) (internal quotation marks omitted)). Even if the Court were to consider this element using *Brawner*, the Court would still find that none of the defendants met this lower standard of recklessly disregarding a risk to Slone's medical needs for the same reasons outlined herein. *See generally Brawner*, 14 F.4th at 585; *Grote v. Kenton Cnty.*, 85 F.4th 397, 408–11 (6th Cir. 2023); *see Gomez*, 2023 WL 7287100, at *4.

Circuit determined that "recklessness" in this context was examined in the same way as "subjective recklessness" in criminal law, meaning that "a finding of recklessness" is permitted "only when a person disregards a risk of harm *of which he is aware*." *Farmer*, 511 U.S. at 836–37, 839–40 (emphasis added).

This subjective element "must be addressed for each officer individually," *Winkler*, 893 F.3d at 891 (citations omitted), and it "should be determined in light of the prison authorities' current attitudes and conduct." *Blackmore*, 390 F.3d at 895 (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)) (internal quotation marks omitted). Accordingly, the evidence must demonstrate that the individual defendant "was aware of facts from which he or she could infer a substantial risk of serious harm." *Winkler*, 893 F.3d at 891. This is "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* (quoting *Farmer*, 511 U.S. at 842) (internal quotation marks omitted); *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 447 (6th Cir. 2014) ("The plaintiff bears the burden of proving subjective knowledge, but he may do so with ordinary methods of proof, including by using circumstantial evidence." (citing *Farmer*, 511 U.S. at 842)). [12]

Ultimately, to find that this subjective element has been satisfied, the evidence must demonstrate that (1) the individual defendant "subjectively perceived facts from which to infer a substantial risk to" the detainee; (2) he or she "did in fact draw that inference"; and (3) he or she

---

[12] The Court notes that there is no evidence in the record showing how long Slone was left unattended in his cell after he was seen by the nurse around 2:25 p.m. on November 2, 2020, and there is no evidence from either party that another staff member checked on Slone between approximately 2:25 p.m. and 5:20 a.m. the following morning. While this may or may not constitute a violation of jail policy, "the failure to follow internal policies, without more, [does not] constitute deliberate indifference." *Winkler*, 893 F.3d at 891; *Cain v. Evans*, No. 3:21-CV-00742-JHM, 2024 WL 713791, at *3 (W.D. Ky. Feb. 21, 2024) ("[T]he failure of prison officials to follow institutional policies or procedures does not give rise to a constitutional claim."). Regardless, the parties do not raise this issue.

"then disregarded that risk." *Jackson v. Wilkins*, 517 F. App'x 311, 317 (6th Cir. 2013) (quoting *Harris v. City of Circleville,* 583 F.3d 356, 368 (6th Cir. 2009)); *see also Cameron v. Bouchard*, 815 F. App'x 978, 984 (6th Cir. 2020) (citation omitted) (discussing the standard for the subjective element). The Court will address this element for each individual defendant in turn.

For Adam Dials, the Court finds that he lacks the state of mind necessary to establish the subjective element for deliberate indifference. Dials arguably had the greatest level of interaction with Slone, observing him during intake and visiting his cell later in the day with the jail's nurse. [R. 36-3]. During his interaction with Slone at intake, no reasonable juror could find that Dials "perceived facts from which to infer a substantial risk to" Slone's health, nor is there any evidence to suggest he drew such an inference. *Jackson*, 517 F. App'x at 317 (quoting *Harris*, 583 F.3d at 368). Slone did not identify any health issues on the Standard Medical Questions form, which Dials reviewed; rather, Slone denied having any serious health issues that jail staff should know about during the duration of his time there. [R. 34-4]; [R. 36-3]. When "ask[ing] [Slone] medical questions" during this intake, Dials observed that Slone appeared intoxicated because of his unsteadiness and placed him in a detox cell to "sober[ ] up."[13] [R. 34-4]; [R. 36-1, p. 8]; [R. 36-3]; *see Smith v. Pike Cnty.*, No. 06-257-ART, 2008 WL 3884331, at *7 (E.D. Ky. Aug. 18, 2008), *aff'd per curiam*, 338 F. App'x 481 (6th Cir. 2009) ("These symptoms are not atypical nor do they

---

[13] Plaintiff's Complaint argues that jail video would prove that "Slone was unsteady on his feet and had to be helped by a jail guard to walk to his cell to keep him from falling down and hurting himself." [R. 1, p. 1]. However, Plaintiff failed to provide the video, and it is not part of the record before the Court. Still, while the Court has not reviewed this video, Dials appears to have noticed Slone's unsteadiness, believed it was a symptom of his intoxication, and took precautions to prevent Slone from getting hurt. [R. 34-4]; [R. 36-1, p. 8]; [R. 36-3]. Further, Slone had already visited the hospital before arriving to the jail and refused medical treatment. [R. 1, p. 2]; [R. 34-3, p. 1]; [R. 36-3]. Still, what type of (if any) hospitalization is required would depend on jail policy. *See Smith*, 2008 WL 3884331, at *2 (explaining that Pike County Detention Center required medical clearance "[i]f someone is brought to the jail and they have trouble walking," for example). In this matter, the Court has no evidence that this jail had such a policy or that Slone was not medically cleared during his visit to Hazard ARH prior to his booking if the jail did have this type of policy. Under the evidence in this case, Slone's unsteadiness would not change the outcome of the Court's determination that the defendants lacked the states of mind necessary to satisfy the subjective element.

distinguish [detainee] from the multitude of drug and alcohol abusers the jail admits everyday. Fortunately, most, if not all, of those admitted 'sleep off' their intoxication."). Thus, the evidence of record demonstrates that, at most, Dials perceived facts indicating general intoxication, and from those facts, he drew the inference that Slone was intoxicated. Dials then placed Slone on a mat in the detox cell to make sure he would not inadvertently injure himself.[14] [R. 36-3]. In sum, then, Dials perceived symptoms that suggested general intoxication during his initial interaction with Slone, he drew the inference that Slone was intoxicated, and he took precautions to ensure that Slone would be able to recover from this intoxication without injury.[15] *Id.* These precautions are not sufficient to show that Dials perceived facts from which to infer a substantial risk to Slone's health or that he did, in fact, infer a substantial risk that he then disregarded.[16] *See Speers v. Cnty. of Berrien*, 196 F. App'x 390, 396–97 (6th Cir. 2006) (determining that a prison guard's "statement" that a detainee was suffering from what he believed was general intoxication, "without

---

[14] This district has previously determined that temporary confinement in a detox cell does not constitute a constitutional violation. *See Bush v. Kellam*, No. Civ. A. 06-CV-147-DLB, 2006 WL 2366432, at *3 (E.D. Ky. Aug. 14, 2006) ("[T]he short period of time (13 hours) in which the plaintiff was confined in 'detox' does not rise to the level of a constitutional violation.").

[15] It is unclear whether Slone was experiencing any stroke-related symptoms at this point, or whether he was only intoxicated, but even assuming he was experiencing stroke-related symptoms, Plaintiff's claim of deliberate indifference against Defendant Dials still fails on the subjective element for the reasons stated herein.

[16] This circuit addressed the implications of placing a detainee on a mat in a detox cell when evaluating the subjective element for deliberate indifference:

> [T]he cadets testified that they escorted Schack into the detoxification cell because of his belligerence. But the cadets also admitted that they had some concern that Schack could fall due to his intoxication, and the police station video depicts Schack walking unsteadily. Thus, construing the facts in the light most favorable to the [p]laintiff, Schack's ability to stand or walk on his own was limited. But the cadets did not leave Schack *standing or walking* in the detox cell; they sat Schack on a bench in the cell, and he remained sitting as they left the cell. Even assuming the cadets recognized the risk that after they left the cell Schack might try to stand and might fall, recognition of an *increased* risk of Schack *falling* is not equivalent to recognition of a *substantial* risk of *serious* harm. Nothing indicates that the officers actually foresaw an injury of this magnitude and maintained their course of conduct in defiance of the risk of harm.

*Schack v. City of Taylor*, 177 F. App'x 469, 472 (6th Cir. 2006).

more, does not establish that the guard was aware that Speers was suffering from a serious medical condition"); *Burwell*, 7 F.4th at 473 (finding that "a pretrial detainee's generalized state of intoxication, without more, is insufficient to establish . . . an officer's deliberate indifference to a substantial risk of serious harm to a detainee" (quoting *Border v. Trumbell Cnty. Bd. of Comm'rs*, 414 F. App'x 831, 837 (6th Cir. 2011))); *Smith*, 2008 WL 3884331, at *1–4, 11–12 (finding that the subjective element had not been met when a now-deceased detainee, who was arrested for public intoxication, appeared intoxicated, had glassy eyes, fell off of her cell mat, slept, and did not have dinner, but was able to walk and did not report any medical conditions on her intake form, because "officers are not required to be mind readers"; [w]hen she fell off of her mat, the officers assisted her in getting back on it. There is no evidence she asked for help at this time, vomited, or was having trouble breathing").

Later in the day, when Slone was seen by the jail's nurse for his condition, Dials still did not act with deliberate indifference. "Cases in this and other circuits demonstrate that a nonmedically trained officer does not act with deliberate indifference to an inmate's medical needs when he 'reasonably defer[s] to [a] medical professionals' opinions.'" *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017) (quoting *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006)). "[A]n officer does not act with subjective deliberate indifference when he does not override a medical recommendation that he reasonably believes to be appropriate, even if in retrospect that recommendation was inappropriate." *Id.*; *see also Spears*, 589 F.3d at 255–56 (finding that officer did not act with deliberate indifference and was "entitled to rely on" medical staff's determination that detainee "did not need to be transported to the hospital," even when detainee reported to officer that he had earlier ingested drugs). When Dials received a call from Kassee about Slone's condition, Dials called the jail's nurse to check on Slone. [R. 36-3]. Thus, while Dials arguably

- 25 -

perceived a risk to Slone's health when he received the call from Kassee, he did not disregard that risk. Instead, Dials called the nurse and observed the nurse's examination of Slone that afternoon. *Id.*; *McGaw*, 715 F. App'x at 498 ("[T]he officers recognized McGaw's condition, summoned a person they believed capable of assessing those risks, and followed the guidance that Nurse Sims provided."). The nurse checked Slone's vitals and assured both Dials and Kassee that Slone's vital signs were not abnormal in any way. [R. 34-5]; [R. 36-3]. After hearing the nurse's conclusion about Slone's vital signs, there is no indication that Dials interacted with Slone further or witnessed any abnormalities about Slone's condition that would make him believe that there was any remaining risk to Slone's health despite the nurse's report. *See McGaw*, 715 F. App'x at 498–99 ("Where . . . an officer responds to a substantial risk of serious harm by asking for and following the advice of a professional the officer believes to be capable of assessing and addressing that risk, then the officer commits no act of deliberate indifference in adhering to that advice."). No reasonable juror could determine that Dials disregarded a substantial risk to Slone's health based on these facts.

Zachary Kassee also did not have the state of mind necessary to establish the subjective element for much the same reason. Kassee walked by Slone's cell "multiple times" during his shift and observed Slone "sitting up, alert, and always seem[ing] to be trying to vomit." [R. 34-5]. Kassee also offered him lunch, but Slone "did not eat much if any of the meal." *Id.* Kassee believed that Slone was experiencing symptoms related to his intoxication. *Id.* Thus, from the evidence before the Court, it appears that Kassee initially perceived facts indicating general intoxication and that he drew the inference that Slone was merely intoxicated. Later, Kassee checked on Slone during the afternoon on November 2, 2020 and "asked him if he was doing okay." *Id.* Slone nodded his head "slightly." *Id.* After this interaction, Kassee arguably did perceive facts to infer a risk to

Slone's health, and drew that inference, as evidenced by his call to Dials, but there is no evidence that he disregarded any such risk. Instead, Kassee acted by calling his supervisor, Defendant Dials, to tell him about Slone's condition; Dials then requested that a nurse on duty check on Slone. [R. 34-5]; *Winkler*, 893 F.3d at 895 ("The record in fact indicates that Deputy LaGrange responded immediately to Hacker's complaints and took reasonable action. As soon as he learned of Hacker's symptoms, Deputy LaGrange brought the information to the attention of his supervisor, Captain Jones[, who advised him to contact medical personnel]."). The nurse took vitals of Slone and said that the results were "good," reassuring Dials and Kassee. [R. 34-5]; [R. 36-3]. Similar to the analysis for Dials above, Kassee was entitled to rely on the nurse's findings of Slone's condition, and his reliance does not show a disregard of any risk to Slone's health. *See McGaw*, 715 F. App'x at 498–99. Even though he viewed Slone's condition as nothing more than intoxication, he still reported Slone's condition to Dials and asked that Slone be checked by a nurse on staff. [R. 34-5]. Once the nurse assured Dials and Kassee that Slone's vitals were normal, Kassee was under no duty to challenge those findings or perceive a risk that the nurse did not. *McGaw*, 715 F. App'x at 497 ("The officers did not act with subjective deliberate indifference when they left an intoxicated McGaw in an observation cell and did not transport him to a hospital or provide additional medical care, because they were following Nurse Sims's indication that this was an appropriate response to McGaw's condition."). There is no evidence that Kassee ever observed Slone after the nurse's examination, much less that he observed a change in Slone's condition from which he might have inferred a substantial risk to Slone's health.

With respect to Matt Hicks, the Court determines that he also lacked the state of mind necessary to satisfy the subjective element. It appears from Hicks's statement that he arrived at Slone's cell at approximately 5:20 a.m. while making his morning rounds. [R. 34-6]. Hicks found

Slone "unresponsive" in his cell, and a reasonable juror could find that, from this, Hicks perceived facts, namely Slone's state of unconsciousness, from which he could draw an inference regarding a substantial risk to Slone's health. *Id.* However, no reasonable juror could find that Hicks disregarded that risk to Slone's health. Hicks promptly called other staff members and then called 911 for assistance. *Id.* Indeed, the EMS Report shows that emergency medical personnel arrived at Slone's cell within seven minutes of Hicks finding Slone "unresponsive in his cell." [R. 34-7, p. 2]; *see Farthing v. Bluegrass Reg'l Recycling Corp.*, 5:20-CV-277-CHB, 2023 WL 6395583, at *23 (E.D. Ky. Sept. 29, 2023) (determining that jailor did not disregard a substantial risk because he took immediate action, such as "escorting Farthing to the emergency room," within two minutes after hearing from [a medical liaison]); *Williams v. Berry*, No. 3:13-CV-1020-JD, 2013 WL 6237866, at *4 (N.D. Ind. Nov. 27, 2013) ("Although it might have been possible for staff to act quicker, Williams has not alleged anything approaching deliberate indifferent to his medical needs. Instead, when custody staff was alerted to his injury, they took immediate steps to assess the seriousness of the injury and then to determine how best to obtain medical care for Williams . . . ."); *Meier v. Cnty. of Presque Isle*, 376 F. App'x 524, 530 (6th Cir. 2010) ("The [p]laintiff also claims that Berg's response once she found Meier unconscious was improper. The record shows the opposite: Upon finding Meier, Berg immediately sought help from fellow officers and summoned an ambulance. The record does not show that she delayed in any way, defeating the [p]laintiff's claim."). There is no evidence that Hicks had ever seen Slone prior to 5:20 a.m. on November 3, 2020, or that he had seen any medical evidence that would alert him to a substantial risk to Slone's condition prior to 5:20 a.m. on November 3, 2020, when he took immediate action. [R. 34-6].

The Court finds that the same analysis applies to Scott Stone. There is no evidence that Stone had any interaction with Slone prior to assisting with resuscitation efforts on the morning of November 3, 2020, or that he had any indication of a substantial risk to Slone's health prior to engaging in resuscitation efforts on Slone that morning. After receiving an urgent call from Hicks that Slone was "unresponsive," Stone immediately came to his aid and did not disregard the risk to Slone's health. *Id.*

The defendants have therefore "inform[ed] the district court of the basis for [their] motion, and identif[ied] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which [they] believe demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (internal quotation marks omitted). Essentially, they have demonstrated an *absence* of a necessary element of the § 1983 claim—the subjective component necessary for a deliberate indifference claim. Plaintiff wholly failed to respond to Defendants' motion, let alone produce "specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial." *Bill Call Ford, Inc.*, 48 F.3d at 205 (citation omitted). As such, the Court finds that Plaintiff failed to meet her burden of demonstrating a genuine issue of material fact.  In any case, because none of Defendants' actions satisfy the subjective element required for deliberate indifference, the Court determines that none of the defendants violated Slone's constitutional right to adequate medical care and are therefore entitled to qualified immunity. The Court will grant summary judgment for the defendants on this federal § 1983 claim.[17]

---

[17] While the Court has already determined that the defendants are entitled to qualified immunity, it is worth noting that "Kentucky's statute of limitations for § 1983 actions is one year." *Gardner v. Lexington-Fayette Urb. Cnty. Gov't*, No. 21-5941, 2022 WL 1039608, at *3 (6th Cir. Mar. 9, 2022) (citation omitted). Slone passed away on November 3, 2020, and this action was not filed until February 10, 2022. The parties do not raise this issue.

### 3. State law claims

Plaintiff's remaining claims are governed exclusively by Kentucky state law. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("Under 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. If the federal claims are dismissed before trial, the state claims generally should be dismissed as well.") (internal quotation marks omitted); *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.").

The Sixth Circuit has provided that a district court is "not required to provide an in-depth analysis of its reasoning" for declining supplemental jurisdiction because "declining to exercise supplemental jurisdiction after dismissing a federal claim of original jurisdiction is purely discretionary" and "remains a doctrine of discretion, not a plaintiff's right." *Miller v. Collins*, No. 23-3191, 2023 WL 7303305, at *4 (6th Cir. Nov. 6, 2023) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). Indeed, although a court may exercise supplemental jurisdiction over state law claims after having disposed of all federal claims through motions for summary judgment, *see Musson Theatrical*, 89 F.3d at 1255, courts often decline to do so. *See Rothe*, 577 F.3d at 709 (reviewing district court's grant of summary judgment and observing, "[u]pon dismissing Brooks's federal claims, the district court properly declined to exercise supplemental jurisdiction over Brooks's remaining state-law claims"); *Weser v. Goodson*, 965

- 30 -

F.3d 507, 518–19 (6th Cir. 2020); *Dunn v. Adams, Stepner, Woltermann & Dusing, PLLC*, No. CV 19-4-DLB-CJS, 2021 WL 3410042, at *8 (E.D. Ky. Aug. 4, 2021).

"In determining whether to exercise supplemental jurisdiction, federal courts balance the values of judicial economy, convenience to parties, fairness, and comity to state courts." *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011) (citations omitted).

> Comity to state courts is considered a substantial interest; therefore, this Court applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed—retaining residual jurisdiction "only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues."

*Id.* (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006)).

Here, the Court perceives no unique circumstances on this record that suggest an exercise of supplemental jurisdiction over Plaintiff's remaining claims would be advisable. *See Dunn*, 2021 WL 3410041, at *8; *see also Fox v. Brown Mem'l Home, Inc.*, 761 F. Supp. 2d 718, 723–24 (S.D. Ohio 2011) (courts should weigh, among other factors, "comity, fairness, and judicial economy"). The first factor, comity to state courts, certainly counsels in favor of dismissing Plaintiff's remaining claims without prejudice. Plaintiff's claims against the individual defendants in Count 2 are all governed by Kentucky law and are areas in which state court adjudication seems advisable. As to fairness to the parties, the Court notes that, while Plaintiff has not presented further argument on the state law claims, Defendants' motion focused only on their entitlement to qualified immunity under Kentucky law and did not include their position on the merits of the various state law claims. [R. 36-1, p. 14]. Moreover, to the extent Defendants rely on their qualified immunity analysis, their argument is largely undeveloped, and the Court will not do their work for

them.[18] Judicial economy therefore supports dismissing these claims without prejudice and allowing the parties to pursue them more thoroughly in state court.

For all these reasons, having disposed of Plaintiff's federal claims, which gave the Court original jurisdiction in this federal question action, the Court finds that the remaining state law claims should be resolved by a state court. *See Aquilina v. Wriggelsworth*, 759 F. App'x 340, 348 (6th Cir. 2018) (characterizing "grant of summary judgment on federal claims as one form of 'pretrial dismissal,' after which 'the balance of considerations usually will point to dismissing the state law claims, or remanding them'" and concluding district court did not abuse its discretion after it "determined that 'a state court should have the opportunity to consider the merits of the [remaining] state law claim'" following summary judgment ruling on federal claims (quoting *Musson Theatrical*, 89 F.3d at 1254–55)). Consistent with Sixth Circuit precedent, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and will dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c).

## III.    CONCLUSION

In sum, the Court will grant in part Defendants' Motion for Summary Judgment, [R. 36], on Count 1, the § 1983 deliberate indifference claim, and will deny Plaintiff's Motion to Reopen Discovery, [R. 46]. The Court will deny in part Defendants' Motion for Summary Judgment, [R. 36], on Count 2, the negligence/gross negligence/wrongful death claims. The Court declines

---

[18] Under Kentucky law, "qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (internal citation omitted). Officers must make a *prima facie* showing that their actions were discretionary and within the scope of employment. *See id.* at 523. Defendants have not attempted to explain how their actions would make this requisite showing. For example, the defendants state that "the record is devoid of any proof that the individual defendants failed to exercise a ministerial duty" but do not engage with the requirements for qualified immunity. [R. 36-1, p. 14].

to exercise supplemental jurisdiction over Plaintiff's state law claims (Count 2) and will dismiss these claims without prejudice.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendants Adam Dials, Matt Hicks, Scott Stone, and Zachary Kassee's Motion for Summary Judgment, [**R. 36**], is **GRANTED in part** and **DENIED in part**.

   a. Summary Judgment is **GRANTED** to the extent Defendants seek summary judgment on Count 1, Plaintiff's § 1983 claim.

   b. Summary Judgment is **DENIED** to the extent Defendants seek summary judgment on Count 2, Plaintiff's state law claims. The Court declines to exercise supplemental jurisdiction over these remaining state law claims (Count 2), and they are **DISMISSED without prejudice**.

2. Plaintiff's Motion to Reopen Discovery, [**R. 46**], is **DENIED**.

3. A judgment will be entered consistent with this Order.

This the 19th day of February, 2025.

*Claria Horn Boom*

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY